IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Brief August 20, 2014

**CRAIG U. QUEVEDO v. STATE OF TENNESSEE**

**Direct Appeal from the Circuit Court for Montgomery County**
**No. 40000492    Michael R. Jones, Judge**

**No. M2014-00028-CCA-R3-PC - Filed October 10, 2014**

The Petitioner, Craig U. Quevedo, appeals the denial of his petition for post-conviction relief. In 2002, the petitioner pled guilty and nolo contendere to seventy-nine counts of various sex crimes involving his minor stepdaughter for which he received an effective sentence of ninety-two years in the Department of Correction. After an unsuccessful direct appeal, the petitioner filed a petition for post-conviction relief, alleging that he received ineffective assistance of counsel at the guilty plea and sentencing phases. This court affirmed the post-conviction court's judgment with respect to counsel's performance at the guilty plea phase but remanded to the post-conviction court with directions to enter an order stating its findings of fact and conclusions of law with respect to the sentencing phase issues. On remand, the post-conviction court again denied relief. In this appeal from our limited remand, the petitioner alleges that he received ineffective assistance of counsel at the sentencing hearing. Specifically, he contends that counsel was deficient in failing to introduce additional positive evidence about the petitioner, namely the details of his military service, his employment history, and his involvement in various community activities. Following review of the record, we affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which CAMILLE R. MCMULLEN, J., joined. JERRY L.SMITH, J., Not Participating.

John E. Herbison, Clarksville, Tennessee, for the appellant, Craig U. Quevedo.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Senior Counsel; John W. Carney, District Attorney General; and Arthur Bieber, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

## Procedural History

This appeal stems from the extensive sexual abuse and rape of the Petitioner's adopted minor stepdaughter over the course of four years. In 2002, the Petitioner pled guilty to thirty counts of rape and twenty-four counts of incest. He also pled nolo contendere to two counts of aggravated sexual battery, four counts of rape of a child, nine counts of rape, and one count of aggravated rape. *State v. Craig U. Quevedo*, No. M2002-02468-CCA-R3-CD. 2004 WL 193072, at *1 (Tenn. Crim. App. Jan. 27, 2004), *perm. app. denied* (Tenn. June 21, 2004). In support of its case, at the guilty plea hearing, the State introduced the petitioner's thirty-three page journal that had been found encrypted on his computer. *Id.* It was noted that:

> in his journal, the [Petitioner] detailed his extensive history of molesting and raping his minor step-daughter, including the [Petitioner's] tactics of coercing the victim by abusing his position of parental authority and drugging the victim with the "date rape" drug, GHB. According to the [Petitioner's] journal, the [Petitioner] began having sexual relations with the victim when she was twelve years old and continued abusing her for four years. The State read excerpts from the journal that corresponded to each of the seventy counts in the indictment of which the [Petitioner] was pleading guilty or nolo contendere, and the [Petitioner] either admitted his guilt or agreed that the State could offer proof from which a jury could convict him.

*Id.* (footnote omitted). The petitioner's plea agreement was open, and the trial court reviewed the conviction and sentencing ranges prior to accepting the plea. *Craig U. Quevedo v. State*, M2010-01399-CCA-R3-PC, 2013 WL 1188957, at *4 (Tenn. Crim. App. Mar. 22, 2013), *perm. app. denied* (Tenn. Sept. 11, 2013). The trial court reviewed the factors it would utilize in determining the sentences and discussed the constitutional rights which the petitioner would be waiving. *Id.* The court also discussed the possibility of consecutive sentencing with the petitioner. *Id.* Following this colloquy with the trial court, the petitioner acknowledged a factual basis for the crimes, stating that his journal entries were true, and entered the pleas. *Id.*

Subsequently, a sentencing hearing was held on the matter. This court, in the petitioner's initial post-conviction appeal, summarized the sentencing hearing proof as follows:

[T]he State introduced the pre-sentence report, victim impact statements from the victim and other family members, and the [p]etitioner's journal. The pre-sentence report showed that the [p]etitioner had graduated from high school, that he had no prior criminal record, that he had been honorably discharged after seven years in the United States Air Force, and that he had worked for over twelve years for a defense contractor and was skilled in computer programming. During the sentencing hearing, trial counsel stated that the [p]etitioner had "a good work history" and that he had worked "in what must have been a highly sensitive area" and "was obviously trusted in that regard." In the pre-sentence report, the [p]etitioner stated that the circumstances of his offenses were "not that important" because of his pleas and that the [p]etitioner believed that he had done "the right thing" and accepted "full responsibility for [his] actions." The [p]etitioner also stated in the pre-sentence report that he had a "difficult" childhood and that he had witnessed his father sexually abuse one of his sisters.

In the victim's impact statement, the victim stated that the [p]etitioner has "used his role of authority to control [her]" and that he had stolen her youth and innocence. According to the victim, the [p]etitioner would "make it a point" to take out his frustrations on the rest of the family if she refused to satisfy his sexual desires. The victim explained that it was easier to give in to the [p]etitioner for "a few, brief, awful moments a day" so that "the rest of the day would be peaceful for everyone." The victim stated that she lived in constant fear of the [p]etitioner and that no one deserved "the torture [she] was subjected to." The victim described the [p]etitioner as having an "incurable disease" and that the [p]etitioner would go "to great lengths to make sure that he" got what he wanted. The victim's mother stated in her victim's impact statement that the [p]etitioner had fled the state after his abuse of the victim had been revealed and that the [p]etitioner had drained the family's bank accounts before he fled.

The [p]etitioner called the victim to testify at his sentencing hearing. The victim reiterated many of the things she had stated in her victim's impact statement. The victim testified that she was now married and had a child with her high school boyfriend, who the [p]etitioner had repeatedly threatened to kill in his journal. The victim further testified that she had frequent nightmares of the [p]etitioner's abusing her and that she had sought professional counseling to help her recover from the [p]etitioner's abuse.

* * *

The [p]etitioner addressed the trial court and apologized for "dragging

-3-

this out as long as it" had. The [p]etitioner stated that he "had to make a very difficult choice" about whether to take this case to trial. The [p]etitiioner stated that he pled guilty and nolo contendere to save [the victim] any further grief and so she would not have to testify at trial. The [p]etitioner stated that he had "made a mistake," but that it "was not [his] intention to harm anyone." The [p]etitioner insisted that his actions were not "premeditated" and that, despite sexually abusing the victim for several years, it just "happened." The [p]etitioner stated that he was sorry that he hurt so many people and that he "caused [himself] a great deal of grief." The [p]etitioner stated that he hoped that the victim and his family would one day forgive him and that he had "a lot of difficulty" with his guilt. The [p]etitioner also stated that he hoped the trial court could see "some measure of character and integrity [in him] that [did not] appear before [the trial court] very often" and that the trial court would give him the opportunity to "be free again" one day.

*Craig U. Quevedo*, 2013 WL 1188957, * 4-5.

In several pages of our first post-conviction opinion in this case this court detailed the specific journal entries which the State read into evidence at the sentencing hearing, *id*. at *1-3, and found them to be "extremely graphic and particularly disturbing." We will not repeat them again here. After hearing the proof at the sentencing hearing, the trial court determined that two mitigating factors applied, those being the petitioner's conduct neither caused nor threatened serious bodily injury and the catchall mitigating factor. *See* T.C.A. § 40-35-113(1), (13) (1997 & Supp. 2002). The trial court explained:

> There has been reference to going to the emergency room, but there's been no determination that . . . criminal conduct caused or threatened serious bodily injury. It may have, but I don't have the evidence to consider it. So, I would find that mitigating factor number one would apply to all offenses; however, it would have very little weight based on the multitude of conduct in this situation.
>
> [Factor] number 13 is that he did in fact enter pleas in this case. That has some weight with the Court. It would have had more weight, however, had he pleaded guilty rather than no contest. I do not find any other mitigating factors that apply to any of the offenses.

*Craig U. Quevedo*, 2004 WL 193072, at *2.

The trial court also applied four enhancement factors to the petitioner's convictions:

-4-

(1) the defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range; (2) a victim of the offense was particularly vulnerable because of age or physical or mental disability; (3) the offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement; and (4) the defendant abused a position of public or private trust. *Id.* at *3; *see also* T.C.A. § 40-35-114(2), (5), (8), (16).

The trial court also concluded that several of the petitioner's convictions should be run consecutively to each other pursuant to Tennessee Code Annotated section 40-35-115(b)(5) because the petitioner was convicted of two or more statutory offenses involving sexual abuse of a minor "with consideration of the aggravating circumstances arising from the relationship between the [petitioner] and the victim . . . , the time span of [petitioner's] undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim . . . ." *Craig U. Quevedo*, 2004 WL 193072, at *3. Based upon these findings, the court imposed an effective sentence of ninety-two years in the Department of Correction. *Id.* at *1.

On direct appeal, the petitioner contended that the sentence imposed was excessive because the trial court failed to consider as a mitigating factor that the defendant grew up in a home where his father sexually abused his sister. *Id*. at *3. He also argued that the sentence was contrary to public policy because it "requires that [the petitioner] die in prison." *Id*. at *4. This court concluded that the trial court had appropriately applied all enhancing and mitigating factors in the case and that the petitioner had failed to even argue at the hearing that his sentence should be mitigated because of his sister's abuse by their father. *Id*. This court also concluded that the aggregate sentence of ninety-two years did not violate public policy because of the facts and circumstances of the crimes committed by the petitioner. *Id*. at *4-5. The sentences were affirmed as imposed. *Id*. at *5. The Tennessee Supreme Court denied permission to appeal on June 21, 2004.

The petitioner next filed a timely petition for post-conviction relief in June 2005 in which he alleged he was denied his right to the effective assistance of counsel. *Craig U. Quevedo*, 2013 WL 1188957, at *1. He was subsequently appointed counsel, and an amended petition was filed on his behalf. *Id*. at *5. Among other claims, the petitioner asserted the following grounds for ineffective assistance of counsel: (1) failing to file a motion to sever the offenses and a motion to suppress the journal; (2) failing to present to the trial court various mitigating factors raised in the pre-sentence report, although admitting that the additional factors could be adduced from the report; and (3) failing to advise him prior to his pleas of the factors the trial court would use in making its determination regarding consecutive sentencing. *Id*. On March 29, 2010, an evidentiary hearing was held. *Id*.

As relevant to the issue before us in the instant appeal, the petitioner's testimony at the post-conviction hearing was summarized by this court as follows:

The [p]etitioner . . . complained that trial counsel failed to introduce significant mitigating evidence at his sentencing hearing. According to the [p]etitioner, trial counsel failed to establish that he was "a person of finely solid character." The [p]etitioner stated that he was a good candidate for rehabilitation because he believed "in the pursuit of excellence in all things." The [p]etitioner testified that he had "worked hard to provide for [his] family" and that his family "suffered for nothing." The [p]etitioner told the post-conviction court that he had "tried to set a positive example for" his children and "provided for them emotionally." The [p]etitioner stated that he had been actively involved in various charitable activities since he was a teenager, and that since being incarcerated, he would read and write letters for fellow inmates who were illiterate. The [p]etitioner testified that other inmates trusted him because they could tell that he was an "intelligent person" and a "caring individual." According to the [p]etitioner, trial counsel should have presented evidence of his community involvement at his sentencing hearing in order to show that the [p]etitioner had "a caring nature and compassion for [his] fellow man." The [p]etitioner also complained that evidence regarding his attraction to the victim should have been presented to the trial court in order to show that his crimes were "a unique instance" that were "impossible to be repeated."

The [p]etitioner testified extensively about his service in the United States Air Force and claimed to have received a top secret security clearance, as well as having been "exposed to classified information concerning nuclear weapons." According to the [p]etitioner, he served in the Air Force from 1979 until 1986. The [p]etitioner claimed that he was "administratively separated" for being overweight, but claimed that he was actually forced to retire from the Air Force due to a conflict between his unit and a base commander. The [p]etitioner stated that the trial court should have been made aware of the details of his military service because he had "served [his] country with honor and distinction" by "performing a mission that not many people can do, providing security and safety for everybody in this country." The [p]etitioner testified that after his discharge from the Air Force, he worked for various defense contractors and eventually became a network administrator. The [p]etitioner argued that evidence regarding his employment history should have been presented to the trial court because it showed that he was "a person of responsible character," that he had "worked in the capacity of

professionalism that not many can achieve," and that he "was a superior performer in every aspect of [his] job."

*Id.* at \*8.

Trial counsel also testified at the post-conviction hearing. However, trial counsel was not asked why he did not offer specific details regarding the petitioner's work history or community involvement at the sentencing hearing. After hearing the evidence presented, the post-conviction court, by written order, denied relief. *Id.* at \*10. Upon our review, we affirmed the post-conviction court's denial of relief in all respects; however, we remanded to the post-conviction court because its order failed to make any findings of fact or conclusions of law with respect to the petitioner's claim that trial counsel was ineffective at the sentencing hearing. *Id.* at \*11-13. Our limited remand instructed the post-conviction court to conduct a hearing, if necessary, and enter an order setting forth that information. *Id.*

Following our remand, the post-conviction court, which was also the sentencing court, entered an order noting that:

> The court has reviewed its notes from the sentencing hearing, the opinion of the Court of Criminal Appeals from the direct appeal, and the opinion of the Court of Criminal Appeals remanding the case and the court's notes from the hearing on the Post Conviction Petition.
>
> The presentence report was made an exhibit to the original sentencing hearing. That report indicated that the [p]etitioner had no prior convictions, had graduated high school and had been employed. The [p]etitioner called the victim to the stand during the sentencing hearing. The State had presented victim impact information. The [p]etitioner's sister also testified at the sentencing hearing describing the conduct as "totally out of character." The [p]etitioner made an unsworn statement expressing remorse for his actions.
>
> At the Post Conviction hearing, the [p]etitioner testified that his job included his receiving classified information, information concerning nuclear weapons, that he had an Honorable discharge from the Air Force, that he was a good family provider, that he mentored high school juniors, that while he was in jail he read letters for inmates and wrote letters for inmates, that he had no write-ups while in jail, that he would buy food for people and provided medical care for youngster.
>
> Mitigating factors were presented by the [p]etitioner at the original

-7-

sentencing hearing and the Post Conviction hearing. There is very little difference between the evidence presented at the original hearing and the Post Conviction hearing.

The [p]etitioner committed seventy counts of sex crimes against his stepdaughter. The court at sentencing listed the crimes charged by offense grouping the offenses rather than using the count numbers. The court made certain counts consecutive based on the prolonged activity of the [p]etitioner as the child grew older.

The court can not find trial counsel to be ineffective at the sentencing hearing.

The petitioner has now timely appealed the denial of post-conviction relief.

**Analysis**

Again, this case was remanded to the post-conviction court for findings of fact and conclusions of law with regard to the single issue of ineffective assistance of counsel as it related to trial counsel's performance at the sentencing hearing. Specifically, whether counsel was ineffective for failing to present sufficient mitigating proof at the petitioner's sentencing hearing.

In order to obtain post-conviction relief, a petitioner must prove that his or her conviction or sentence is void or voidable because of the abridgement of a right guaranteed by the United States Constitution or the Tennessee Constitution. T.C.A. § 40-30-103 (2010); *Howell v. State*, 151 S.W.3d 450, 460 (Tenn. 2004). A post-conviction petitioner must prove allegations of fact by clear and convincing evidence. T.C.A. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); *Dellinger v. State*, 279 S.W.3d 282, 293-94 (Tenn. 2009). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009) (quoting *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998)). In an appeal of a court's decision resolving a petition for post-conviction relief, the court's findings of fact "will not be disturbed unless the evidence contained in the record preponderates against them." *Frazier v. State*, 303 S.W.3d 674, 679 (Tenn. 2010).

A criminal defendant has a right to "reasonably effective" assistance of counsel under both the Sixth Amendment to the United States Constitution and Article I, section 9, of the Tennessee Constitution. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). The right to effective assistance of counsel is inherent in these provisions. *Strickland v. Washington*, 466

U.S. 668, 685-86 (1984); *Dellinger*, 279 S.W.3d at 293. To prove ineffective assistance of counsel, a petitioner must prove both deficient performance and prejudice to the defense. *Strickland*, 466 U.S. at 687-88. Failure to satisfy either prong results in the denial of relief. *Id*. at 697.

For deficient performance, the petitioner must show that "counsel's representation fell below an objective standard of reasonableness" under prevailing professional norms, despite a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 688-89. "In other words, the services rendered or the advice given must have been below 'the range of competence demanded of attorneys in criminal cases.'" *Grindstaff*, 297 S.W.3d at 216 (quoting *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). The petitioner must prove that counsel made errors so serious that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. When reviewing trial counsel's performance for deficiency, this court has held that a "petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). The reviewing court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689). However, "deference to tactical choices only applies if the choices are informed ones based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Burns*, 6 S.W.3d at 462 (quoting *Strickland*, 466 U.S. at 691). "[W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." *Strickland*, 466 U.S. at 691. "Counsel must conduct appropriate investigations, both factual and legal, to determine what matters of defense can be developed." *Baxter*, 523 S.W.2d at 932-33.

Prejudice in turn requires proof of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In *Strickland*, the Supreme Court noted that "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. The court clarified that

prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

A claim of ineffective assistance of counsel raises a mixed question of law and fact. *Burns*, 6 S.W.3d at 461; *Grindstaff*, 297 S.W.3d at 216. Consequently, this court reviews the trial court's factual findings de novo with a presumption of correctness, unless the evidence preponderates against the trial court's factual findings. *Grindstaff*, 297 S.W.3d at 216. But the trial court's conclusions of law on the claim are reviewed under a purely de novo standard with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

The petitioner relies upon the case of *Goad v. State*, 938 S.W.2d 363, 371 (Tenn. 1996), to support his argument that trial counsel failed to present sufficient mitigating evidence at the sentencing hearing. In that case, the court noted that where the alleged prejudice involves counsel's failure to present sufficient mitigating evidence, several factors are of significance: (1) the nature and extent of the mitigating evidence that was available, but not presented; (2) whether substantially similar mitigating evidence was presented to the jury in either the guilt or penalty phase of the proceedings; and (3) whether there was such strong evidence of aggravating factors that the mitigating evidence would not have effected the sentencer's determination. *Id.* at 371. Applying this standard, the petitioner asserts that the mitigating evidence which was not presented at sentencing, but was presented at the post-conviction hearing, was quite substantial. As such, he claims that the evidence in the record clearly preponderates against the post-conviction court's findings. While agreeing that his actions were reprehensible, the petitioner contends that the additional evidence at the post-conviction hearing established that he was "a more worthwhile contributor to society than the original sentencing hearing revealed." Specifically, he refers to his employment history involving security clearance, his work in the military with nuclear secrets, his community involvement with young people, his aid to inmates, and his provisions for his family. The petitioner insists that more of this type of evidence would have shown the court a more responsible man amenable to correction and, in general, a man of good character.

Initially, we are constrained to note that the case relied upon by the petitioner applies in capital sentencing cases where a defendant's background, character, and mental condition are unquestionably significant. Thus, the petitioner is arguing under an improper standard. To the extent that the petitioner invites this court to expand *Goad* beyond capital cases, he has failed to provide argument or authority in support of his position. Accordingly, we decline his invitation. Regardless, even applying the *Goad* standard, we would not find error

in the post-conviction court's decision.

Upon our review, we see nothing in the record which preponderates against the post-conviction court's order concluding that trial counsel was not deficient for failing to present more mitigation evidence and that, generally, the same evidence was presented at both hearings. As noted by the post-conviction court, the pre-sentence report provided that the petitioner was employed, had prior military service, had graduated high school, and had no prior convictions. The petitioner admitted as much in his post-conviction petition, stating that "additional mitigating factors[] could be adduced from the presentence report." *Craig U. Quevedo*, 2013 WL 1188957, at *5. In addition, at the beginning of the sentencing hearing, trial counsel argued that the petitioner had "a good work history," that he had worked "in what must have been a highly sensitive area," and that he "was obviously trusted in that regard." Based on this evidence, the trial court properly considered and applied Tennessee Code Annotated section 40-25-113(13), the catchall mitigating factor, in sentencing the petitioner. At the post-conviction hearing, the petitioner provided detailed testimony regarding his military employment history, community service, and care for his family. We agree with the assessment by the post-conviction court, which previously acted as the sentencing court, and conclude that there is little difference in this evidence and the evidence offered at sentencing.

As an aside, we honestly fail to understand the argument that presenting testimony that the petitioner was employed by the United States Air Force to deal with secret classified information would have resulted in any benefit to the petitioner's sentence in light of the crimes for which he was convicted. As noted by the post-conviction court, the petitioner was convicted of seventy-nine counts of various sex crimes against his minor stepdaughter committed over a period of four years. The petitioner has also failed to meet his burden of showing how introduction of more mitigation evidence would have had a reasonable probability of changing the outcome of the sentencing hearing. Trial counsel and the petitioner were faced with a terrible set of facts, which this court has previously characterized as "particularly disturbing." The State introduced the petitioner's journal into evidence, which contained extremely graphic depictions of the abuse the petitioner committed against the victim over multiple years. It also spoke of the petitioner's jealous behavior when he discovered that the victim had begun having a sexual relationship with her boyfriend and the actions he wanted to take against the boyfriend. The State also introduced the victim's victim impact statement, in which she described the petitioner's abuse and stated that she "lives in constant fear from the years of abuse by the [petitioner]." *Craig U. Quevedo*, 2004 WL 193072, at *1. She stated that the petitioner would go to "great lengths to make sure he got what he wanted," and that no one deserved "the torture [she] was subjected to." *Id.* At the sentencing hearing, the victim testified that she continued to have frequent nightmares and flashbacks of the petitioner's abuse and sought professional counseling to help her recover.

-11-

*Id.* at *2.

Although not specifically referenced in the order, from its determinations, we must presume that the post-conviction court made a credibility determination after hearing the testimony of the petitioner. Those determinations are best made in the lower court and are rarely disturbed on appeal. Here, the record fully supports the court's credibility determination. Perhaps the trial court did not find the petitioner to be more a "man of integrity" than was normally seen in the courtroom or that he showed "care and compassion to his fellow man." In further support of this finding, the petitioner's statement that his "family suffered for nothing" is inconsistent with our review of the record. The petitioner depleted the family accounts upon discovery of his crimes, and the victim testified to the "torture" she suffered due to the repeated rapes and years of abuse at the hands of the petitioner.

As was the post-conviction court, we are unpersuaded that the information presented by the petitioner at the post-conviction hearing would have in any way affected his sentence. The petitioner has simply failed to carry his burden in this case. A great deal of the length of the sentence is based upon consecutive sentencing, a topic not mentioned or challenged by the petitioner in his argument. Based upon the multiple counts and the duration of the abuse, the court, pursuant to the statute, properly imposed the consecutive sentences. Again, the post-conviction court, who also served as the sentencing court, did not see how the information would have changed the determination. Accordingly, the petitioner is not entitled to relief.

**CONCLUSION**

Based upon the foregoing, the denial of post-conviction relief is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE

-12-